Next case we're going to hear is United States v. Warner and Ms. Hester. I guess we'll hear from you first. May it please the court, Anne Hester representing Xayver Warner. The prosecutor breached Warner's plea agreement by failing to make the promised sentencing recommendation in this case. She did that by submitting a document to the court explaining two things. One, that in the government's view the probation officer was correct in determining that a firearm was possessed in connection with another offense. And two, that the other offense was, in the government's view, a felony. The probation officer then included the government's statement verbatim in the final PSR. Under United States v. Brown, the government's conduct breached the plea agreement because the government had agreed to recommend against application of this sentence enhancement under 2K2.1. Brown doesn't allow the prosecutor to ask the court to enforce the party's agreement while at the same time telling the court that the recommendation is legally and factually wrong. Ms. Hester, it's a very difficult inquiry to cap. And so I'm going to ask you, if you will, to help me, for analytical purposes, sort of bracket precisely what was wrong. Because the prosecutor did reiterate the recommendation several times. Not enthusiastically, but reiterated. So is your argument turning off? Can you focus your argument to help me understand? Is it the letter? It's the letter. Right, it's completely the letter. Thank you. Brown doesn't allow the prosecutor to ask the court to enforce the party's agreement while at the same time undermining it. By saying it was wrong. By saying it was wrong. So even if, say for instance, the trial court had asked about the office, would it have been wrong or reversible for her to say our office has had a change in policy? Yes, I think so. But she did more here. I understand. But, again, this is just for my benefit in terms of understanding the parameters. Right. I think it would have been wrong for her to say the office. But clearly, even though the statement, and the reason that I'm having a little difficulty is that at least the statements with respect to the office policy were factual kinds of statements. Do you see what I'm saying? They were really legal statements. They were a change in position on the legal classification of what is a felony. Right, but the change in position of the office was a factual statement. Whereas the letter gives a view of the law. Right. You see what I'm trying to say? And a view of the facts. And a view, yeah. And I understand there. But with respect to the statements about the policy change. Right. In the office, that seems to me of a different kind. Can you help me with that? Because it may just be, I can see that being, A, factually accurate. And, B, a conscientious attempt by the prosecutor to explain why you might see the government taking a different tact in the future. Right, and I understand what you're saying. I don't think it was necessary to say that in this case. The appropriate place to say that would have been in the other case where the government was changing its position. Right. The next case, you mean. Right. Right. But it was wrong here, too? And you don't have to agree with me or disagree with me because I understand what you're saying about the letter. I think it was wrong here, too. And I think the government's remedy, if they have a change in policy that disagrees with the plea agreement, then they should move to rescind the plea agreement and let the defendant start off as he was before. They should start over and let him negotiate a plea agreement or just plead straight up without an appeal waiver because he gave up a very important right by pleading guilty. Well, can they back out of a plea agreement after they've signed it? They can move to rescind just like. They can move to rescind. They can move. They can move. They couldn't just say we changed our mind. They can't do it unilaterally. No, they can't do it unilaterally. I mean, it should be the same for the defendant, right? Right. Or approved. Right. I'm sorry. So under Santabello, this court should vacate Warner's sentence and remand to a different judge for resentencing. Are you electing to specifically enforce? Yes, that's correct. And the court should also. And so you can't really make your other arguments. They're sort of conditional arguments as if we don't accept it. Alternative argument. If we don't, in order to go on to your next argument, you have to assume that we don't find breach. That you do find breach. I'm sorry. That we, if we find breach. You can't attack the findings of the plea agreement. For instance, your third argument on 4B12A is the application of Johnson. You can't make that argument consistent with insisting on specific performance. It has to be some kind of an alternative. Clearly an alternative. Well. And conditional. What I'm asking the court to do is make a ruling on those issues because Warner, if we're correct about those, he's looking at a sentencing range of 15 to 21 months. So if it goes. But how does it, how can we do that? If we specifically, if we send this back. Right. Doesn't anything else we say become just pure dictum? Yeah, and you've agreed to the other enhancements. And there was a two-level enhancement you agreed to. That's correct. And you agreed that the four-level enhancement would not apply. If you get specific performance, you have to stand behind your agreements. And you can't come up here and have us challenge aspects of the agreement now. Well, what I understand what you're saying, Judge Neimark. It's specific performance. This is specific. It's a cane appeal. You waived the appeal. He did waive the appeal. And what I would say about that is these Johnson cases are really in flux right now. They are. And if he appealed, if he lost the Johnson issue below and appealed it, who knows what the government would do. They would have to assert a waiver. This is why I asked you about your election. It's a consequential decision. And I gather you're clearly and unequivocally asserting election under Sanabella. Yes. Specific performance for every judge. Yes. And if you elect that, you can't now say the waiver doesn't apply. And you also can't say that a component of your agreement is now illegal. In other words, you either elect it or not. The government changed its position following the plea agreement. And if you win, the government will be held to its agreement that it didn't apply. Now, I think the government could still make that statement to the court based on facts as opposed to the law. But quite apart from specific performance is a dicey thing. In other words, it keeps in place the agreement. Are you talking about the 2K2.1? You have two arguments. You argue first of all on the merits. You argue that the B6B doesn't apply. Right. And that's what we agreed to in the plea agreement. Right. That it does not apply. But you also argue that 2A, 4B1.2A is error because Johnson applies. Right. And there's no portion of the agreement that covers that. Well, I thought the base offense level was determined on the basis of that. I don't think that they agreed to base offense level. They had to. They just agreed. Didn't your government before the court agree that the range was 31? What was the? What was in the PSR which? There was no agreement in the plea agreement as to base offense level. They just agreed. What page is the? Page 73 of the joint appendix. The only agreements were with the two-level increase that it does apply and that the four-level increase does not apply. Okay. So that's Paragraph 7? Correct. So when you got before the district court, I thought you agreed that the sentencing range was 31 to 51 months or something. What was the? I think that. What was the dialogue with the court during the sentencing? I think the agreement was subject to our objections that that was the correct range. I mean, it's obviously we did not make an objection based on the Johnson. Well, I think I'm suggesting it might even be further than not making an objection, which would be a plain error. It may be invited error. In other words, if you agreed that the range was 31 to 51 months, which would obviate your third argument. You understand what my question is? I understand that you're saying it's forfeiture rather than waiver, or waiver rather than forfeiture. Yeah. I disagree with that. I think that that's just straight up plain error. I just wanted to know what you said for the court. I thought that you guys were discussing a specific range that everybody agreed to. Is there a provision in here of what happens if the government breaches? There's no provision in there about what happens if the government breaches. But, again, it's specific. It's just general contract. General contract. And I'd like to talk about the enhancement for using or possessing a firearm in connection with another felony offense, because I think that really illustrates how off-base the government was in telling. If the government breaches, you have a right of appeal. Correct. So we have a right to appeal these issues. Is that because the agreement is void? It's because they breached the agreement. Well, they breached the agreement. But you're asserting a specific performance. You said you want a specific performance. Which preserves the agreement. That's true. Well, then. Then you still can't appeal. If you want them to stick to their agreement that they're going to jointly recommend under Paragraph 7, that they would have to comply with the agreement, and then you'd have to comply with the agreement, and you couldn't appeal. I think that's what we're asking now. Well, Your Honor, you may be right about that. I know that's what we're getting at. And the government didn't raise that issue, so honestly. That's the hard question. Yeah, I hadn't thought of that until I got up here today, and I think you may be right. And all along, you know, I recognize that the court didn't necessarily have to address these other two issues if the court finds breach. We not only don't have to, but the waiver precludes it, doesn't it, if we enforce the agreement. If you enforce the agreement. Which is what you're asking. Yes. That's the problem I'm having. Okay. I understand what you're saying. But remanded to enforce the agreement, and then you could ask to get out of it, maybe. Well, we want specific performance. Well, we wouldn't have to reach all that because you haven't asked. You mean the other two issues? You've asked us to hear the appeal, and the appeal waiver says that you won't challenge anything except based on government misconduct and what. Well, and, of course, that's what breach of the agreement is. Well, it's not. It's a breach of the agreement. They could unintentionally breach the agreement, couldn't they? Make a mistake. Wouldn't that be misconduct? Right. I mean, lawyers don't necessarily commit misconduct because they take a wrong position. Right. I think they could. But I'm musing, I think, that they could breach the agreement without actually engaging an attorney of misconduct. Right. I believe. I think we're actually all musing at this point. But the long and short of it is what we would ask the court to do is enforce the agreement. So we have no jurisdiction over the appeal. We have to dismiss the appeal. Dismiss the appeal? Well, you can't dismiss the appeal because we have the right to appeal the agreement. We can find it was improvidently granted unless one of the... Well, accepting the exception is a breach. Breach. And once we find a breach and honor your election under Santabella. Right. That ends the matter. That, I think, would be correct if what you're saying is true. If specific enforcement means that we don't get to appeal other issues, then you hear the appeal... Well, because you're governed by the waiver. ...on the breach, you hear the appeal on the breach. So if you find that they are in breach, you correct that mistake... By giving you the relief you want. By giving us the relief we want. Okay. And then... But that's it. But then I guess... Just the rest. Which is specific performance. Right. Right. So we still don't get to the other issues. That's what makes sense in light of what the court has brought up. Under the agreement, the defendant waived all rights to contest the conviction except claims of ineffective assistance counsel and prosecutorial misconduct. There's no denying that. I mean, that's what it says. He knowingly expressed he waived all rights under 3742 or otherwise to appeal whatever sentence is imposed with the two exceptions set forth above. So if the government's breached, you're not bound by that. Right. But if you want specific performance, the government is bound to comply with the recommendation, and you're bound to comply with these obligations too, wouldn't you? As to the other... As to the rest of it. Everybody being bound to comply with the provision of the agreement. Honestly, I have never seen a case... So which means you couldn't raise... I wanted... You couldn't come up here and raise Johnson. What if the... I don't know what the impact of all that stuff. It may be a tough issue. Maybe all the decisions haven't come down yet. I mean, every decision I've ever... You say in your brief that under the plea agreement, the range would be 33 to 41 months. That's what you state categorically there on page 5. PSR recommended a guideline range of 51 to 63 months, but noted the party's recommendation of a plea agreement, although that plea agreement is 33 to 41 months. That's what the PSR noted. Right. You'd get the PSR reduced by 18 months, something like that. Right. I mean, the... With Johnson issued, if that were successful. Right. Right on the brief. Thank you. No, thank you. This has been the most marvelous collaborative process. Well, it might not be over here. Ms. Ray may have a lot to say about it. Ms. Ray wishes that before she had prepared for oral arguments, she'd appreciate it. I appreciated this issue as I was preparing for oral arguments. I thought specific performance had a, you know, anyway. I did not, I will confess, when I was briefing the case. We get this in the civil area. You know, there's somebody comes in and alleges fraud in a contract. Right. And you can affirm the contract and sue for damages for breach, or you can vitiate the contract. Right. If you elect to vitiate, you don't get the damages. Yep. I mean, all of it makes perfect sense, and as I was preparing for oral argument, I thought, why didn't I emphasize the fact that she specifically has, he has specifically requested specific important, anyway. Part of why is because we don't believe that we breached. So I suppose that's the. Well, you ought to address that issue. That's, of course, important. That's right. But I do agree with the collaborative process so far that suggests that if this court were to find breach, then based on the requested relief, it goes back and the appeal waiver remains valid, remains enforceable, I should say. And you have duties. If we were to enforce, you would have the duty. We do. To say, to recommend that the particular guideline does not apply. We would. I will say this, Judge Niemeyer, it's a curious position to be in because Barlow has been decided. Except, except, during the course of the negotiations, your office, you or your office said, we have to check the facts and the witnesses. Correct. But we think we can go along with that. We agree. If factually you're not satisfied that it was during the course of, that it would apply, it doesn't compromise the legal position that you could preserve for another case or raise. But I don't believe you can say we agree to say it doesn't apply and then come and say, oh, but our office thinks it really does apply, and so all we want you to do is enforce agreement because we agreed, which is noble of you, but it's a lot different for the district judge. Now he's in this gamesmanship. He says, well, he knows your position. He'll take on the responsibility. Right. Whereas if you say your position is it doesn't apply, now there's no one defending the district judge. Particularly with respect to the letter. Right. Now, I want to make the point that the letter needs, and I think that the issue of breach is close. I'm not going to suggest that it's not. But with respect to the letter, I think it's important to appreciate the timing of this and the context. This is post-Simmons. The Valdivinos came out in July of whatever it was, 2014 maybe. I can't remember. And so this sentencing, the objection was filed after the PSR recommended the enhancement. We objected. But by then, that was in October. Between July and October, this court, Judge Conrad had seen cases in which we had argued that the Barlow issue, we had said these are felony offenses. And that goes to the distinction I was making between the letter and the representation, which I have a little more difficulty, I think is close because the prosecution has an obligation to inform the court of the circumstance. That seems to me in a slightly different cast than the letter. I also think it wasn't a change of policy. I want to be clear. This wasn't just a policy issue. This was looking at this court's decision in Valdivinos, which Ms. Hester and I happened to have argued. And the footnote, and I had said all along, I don't know what the right answer is under the Justice Reinvestment Act. We really weren't sure. But we were very sure that we wanted to respect Simmons. That was a hard-fought case. And we did not want to take it, you know, seem to be disrespecting it by immediately arguing the justice. We just wanted to wait and see how things shook down. And then after we did, after Valdivinos came out and there was a footnote saying this problem has been solved, although it was dicta, that was enough for us to say we're making this argument now. And it wasn't a policy decision insofar as we were relying on legal authority. But that doesn't seem to me to help you. It may not. Because it makes it even harder that you're presenting it sua sponte to the court. Well, that's part of what I'm suggesting, which is though it is not on this record, and so I'm just saying that in the context of the post-Simmons litigation, I'm not sure it was sua sponte in this case, absolutely. But the government did that with an awareness that Judge Conrad was already, you know, already knew. And so might wonder, why did the government agree to this? Why did the government agree to this? Well, he didn't ask. He did not. He could have asked you that if he wanted to. He could have. If the government agrees to something, we need to stick with it. We all know that. Definitely. And I think the question is in the context of all of it, did we stick with it? And when she recommends over and over again, we ask that you honor the agreement. We ask that you don't. When I looked at this record, I felt like on balance. It's like asking him to honor the agreement but. But. We've got a policy change. I think it was but. We have legal authority, and we need to let you know. But the probation officer is right. But. And yet. Change the policy in the office. Well. I don't know what that has to do with anything, your policy in the office. I mean, you can violate the change in the office. The other thing is. If you don't want to win, you can change it again tomorrow. Of course. You seem to rest this on a factual point. In your email here, this is at 123, you say. At this time, I do not have information for your office. I do not have information that would implicate him under this section. The investigation and talks with witnesses and the co-defendants are ongoing. But I can, as of now, agree that this does not apply. Right. So it seems to me you can still stick with that without compromising the notion that these are felonies. There's two components. One is that in connection with a felony is one aspect. Right. But. I'm not sure you can. Oh, maybe you can't. Because the next sentence. I have put this language in the attached plea agreement. And then once that plea agreement is signed by the government and the defendant, it's that. It's it. It's an agreement. Correct. You're stuck with it. They're stuck with it. Correct. Oh, no. My question wasn't directly to that. She's stuck with it. But she has to now go back. If we grant specific performance, you have to go back before a different judge and carry out your plea agreement. Which is to state in your judgment this does not apply. Right. And you can't say that on a legal basis. Right. We would be imposing on you to take a position that you aren't comfortable taking at this point. Well. It's difficult to order somebody to say that the house is red. Right. When it isn't red. I think that the government's advocacy in the district court did not argue those facts. We didn't argue the facts. We have argued on appeal because in the district court we adhered to our agreement not to suggest that factually that enhancement should apply. We adhered to our agreement not to make that fact argument. If we were to impose specific performance, what would you say to the district court? Well, what I would say to, I'm not going to be the one, but what I would say to my colleague, I might. Sometimes I do. But what I will say is you go in and you don't say anything other than we recommend that against this enhancement. This is our agreement. But that doesn't comply with the agreement. There is a difference between recommending a sentence and agreeing to say it doesn't apply. Well, we say recommend in the plea agreement. The plea agreement says the government agrees to recommend that this enhancement does not apply. Parties agree that this enhancement does not apply. Right. That recommend. It's always a recommendation. Right. So we would say the same thing except we would, and then the court would have to reach its own Barlow decision under Barlow. But I suppose, you know, so we would do the same thing with respect to the fact. The parties agree that the four-level increase does not apply. Right. You have to go back to the lead-in to get into the recommend. Well, that's right. But that is, this is what we agree to recommend. We agree to recommend that it does not apply. Parties agree. Then you say the parties agree again. You put agree again after the recommend. Yes, I looked at that language. Which sounds to me like you're agreeing that it doesn't apply. Yeah, I didn't really like, yeah, I looked at that thought.  The ambiguity would go confused. I agree, Your Honor. But whether or not, either way, in the district court. It's a recommendation and the district court understands it. Maybe if it goes back to this, leave it open and y'all can figure it out. But whether you want a specific performance, you're going to start from scratch. Well, I think that's, you know, they've asked for specific performance from this court. Right. What they do in the district court, perhaps they want to see precision, I don't know. But I will say that I don't think, and I think it's important, that this prosecutor violated this agreement by asserting facts that were contrary to the application of the enhancement. She did not. And I think that the point, the reason that she gave the court. Well, it didn't say facts. It said agree that it doesn't apply. Absolutely, and I'm not.  She recommended that as part of the agreement. And then she explained that it does apply. She also said the correct guideline range, and she used that language, was the lower guideline range. She really said both things. On the one hand, she said the probation officer's conclusion was correct, at least with respect to the legal issue of whether or not the breaking and entering of a car constitutes a felony offense. But she also said in the same document and repeatedly at the sentencing hearing, that the correct guideline range was the lower range. So we really have both things being said. And I just think I'm not trying to diminish the importance of the letter or what she said, but I do think it's important for the court to understand the context in which that was written, which was some evolving. We wrote that letter. She wrote that letter in response to valid venous and a particular legal authority that came out. If this court determines, though, that that's a breach, then I think we don't, and we adhere to the request of the specific performance, we don't get to the other issues. I'd be happy to address them if the court would like to talk about them. I think the Johnson issue. Some of those were tough. Oh, I don't think so, Judge King. Not too tough. I think we're okay. The Johnson issue is still up in the air. The Johnson issue is, but it's on plain error review, and we have Presley. The Supreme Court argued one about that not long ago, didn't they? Well, the Supreme Court's getting ready to address robbery. They had the argument. Did they already have the argument? I didn't. Didn't we have Hubbard in our court argue today? We had Hubbard argued on the retroactivity issue. My guess is I'm not there, and I haven't talked to any of the judges, but now you have the Supreme Court in play. Welch, I'm not going to suggest what should happen. It's a developing area of the law. It's a developing area, and I'm perfectly happy to have this court. I was very pleased to see several cert grants this year because no matter what, they ought to make my life a little bit clearer. It all started with Apprendi, didn't it, way back? It seemed to me that way. It did. I mean, we have been put to work double time, and we didn't get double our salary. We got a nice increase. Thanks to the Federal Judges Association. Not only that, but I will say that the government at least wasn't allocated additional positions in order to respond to these legal issues. At least the appellate divisions have not been. We haven't been beefed up. So, anyway, but, yes, it's been quite an interesting journey. All right, thanks. Thank you. Thank you. We appreciate having you up here and helping us out. Ms. Hester? I'd like to start by bringing up something that I think I failed to mention when I was up here before, and that is that you're not changing your position, are you? No. You're not? Whatever it may have been, it's the same. On the specific performance? No, I just want to talk about the specific performance and what is needed to accomplish specific performance. You're sticking with specific performance? Oh, yes. We're sticking with specific performance. We wouldn't dictate how to carry it out. Well, I want to – If we conclude it's breached and we honor your election, Santabello basically says to send it back to a different judge for re-sentencing. Right, and because of that, I need to bring up this point, and that is that there are two documents in the district court's record that display this breach. The letter? The letter, and then the final PSR repeats it verbatim. It repeats what? It repeats the letter. It takes the text of the letter, basically, cuts and pastes it. The first PSR could be used, or we could instruct – the problem is we don't want to dictate what the PSR says. I mean, that's an independent judgment that's made and given to the judge. Right. But the first one would be available to the judge, wouldn't it? The first PSR? The first PSR. Without the letter? I mean, I think what would be appropriate would be to strike the final PSR and ask the probation department to prepare a new one. We wouldn't have to get into all that. Well, I just want to avoid having the new district court judge. I know, but then we end up telling the PSR what to do. We're now telling them they committed error, and they didn't. They made a judgment call based on their own judgment. Right, but based on the breaching document. Yes. What I'm asking the court to consider is how can we send this back without having the same information. The new judge is going to not operate immaculate. We're not going to be able to isolate this. There's been an appeal filed. The briefs have been filed. This is all public. It's not something you announce, but you have to count on the good faith of a new district judge looking at this and making a judgment. Don't you think that the very fact that we find breach and order-specific performance on the grounds that you suggested reflects the determination for all practical purposes that you're seeking without making us responsible for doing something through the PSR? I mean, doesn't our action, doesn't whatever action the – If we were to hold that, we would be saying that letter breaches, and now you have a new district judge who's heard what we said and is trying to enforce the agreement as best as it can be or hold the U.S. Attorney to enforce it. Well, I'm just asking the court to consider that. Okay. With respect to the breach itself, what it boils down to here is that we're – Alleged breach. From my point of view, it's a breach. From your point of view, alleged breach. Warner just – he didn't get what he bargained for here. Regardless of any new legal authority, he didn't get what he bargained for here. There's no provision in the contract allowing the government to change its position based on new legal authority, and they're the writer of the plea agreements. That should be construed in Warner's favor. Well, just to give the government just a little – to point out a little bit of a problem, if a legal position changes from the time they entered the agreement to the time of sentencing, and they were – had to represent what the law was, they couldn't go back and represent what the law was improperly on a specific performance. That would be – beyond that, we would be requiring disingenuous conduct on the part of the U.S. attorney. That's correct. But in this case, this is one reason I ask you to look at that second issue, even though it looks like the court has decided it shouldn't address that. But you can look at that to see all of the legal – We haven't decided anything. I understand. But you should look at that second issue, regardless of how you come out on that, to see all of the – there are several different legal bases for why this shouldn't apply, as well as a factual basis. So I think the court should take that into consideration, too, when you're thinking about these things, that that Valdovinos issue was just one of several issues that are applicable here that mean that the enhancement should not be applied. Thank you. Thank you. We'll come down and brief counsel and proceed on to the last case.
judges: Paul V. Niemeyer, Robert B. King, Allyson K. Duncan